Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| GLORYMAR RODRÍGUEZ DÍAZ<br><br>**Recurrente**<br><br>Vs.<br><br>AUTORIDAD DE LOS PUERTOS<br><br>**Recurrida** | TA2025RA00118 | *REVISIÓN ADMINISTRATIVA* procedente de Junta Apelativa Autoridad De Los Puertos<br><br>Querella Núm. JA-22-09<br><br>SOBRE: Represalias |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de octubre de 2025.

El 29 de julio de 2025, la Sra. Glorymar Rodríguez Díaz (señora Rodríguez o la recurrente) compareció ante nos mediante un *Recurso de Revisión Judicial* [...] y solicitó la revisión de una *Resolución* que se emitió y notificó el 27 de junio de 2025, por la Junta Apelativa de la Autoridad de los Puertos de Puerto Rico (JAP). Mediante el aludido dictamen, la JAP desestimó la apelación presentada por la señora Rodríguez y, en consecuencia, ordenó su archivo.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 7 de junio de 2022, la directora de Recursos Humanos y Asuntos Laborales le cursó una misiva a la señora Rodríguez.[1] En esta comunicación oficial, se le notificó a la señora Rodríguez que, conforme al Reglamento de Personal Núm. 4453 y a la Ley Núm. 8-2017, según enmendada, mejor conocida como *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, 3 LPRA sec. 1469, *et seq.* (Ley Núm. 8-2017) se aprobó la

---

[1] *Véase*, págs. 11-12 del apéndice del recurso, SUMAC TA.

reclasificación, transferencia y traslado de su puesto al cargo de Auxiliar de Asuntos Gerenciales II en la Sección de Crédito y Cobros del Negociado de Finanzas, efectivo el 16 de junio de 2022. Se le indicó que la medida respondía a la necesidad de servicio, que no implicaba cambio de salarial ni afectaba su estatus de carrera, y que debería reportarse a la Administración de Asuntos Financieros para recibir las instrucciones correspondientes. Por último, se le informó que el puesto estaba clasificado como no exento bajo la *Fair Labor Standard Act*, por lo que debía registrar su asistencia cuatro veces al día, incluyendo horas extra, y que recibiría próximamente la Acción de Personal (OP-48) junto con la especificación de clase correspondiente.

Inconforme con esta determinación, el 8 de julio de 2022, la recurrente presentó un *Escrito de Apelación*.[2] Esbozó que, el 17 de octubre de 2017, la Oficina de Recursos Humanos la asignó al Negociado de Gerencias Marítimas, en la plaza de Especialista en Contratos. Expresó que, a raíz de la reestructuración de ese año, dicha plaza quedó adscrita a la División de Contratos. Sostuvo que, desde su llegada, asumió funciones y deberes que correspondían inherentemente a la plaza vacante de Supervisor de Contratos. Indicó que, dichos cambios significativos en sus responsabilidades dieron lugar a un crecimiento lógico en su puesto, respaldado además por sus excelentes ejecutorias.

En virtud de lo antes expuesto, alegó que, el 28 de mayo de 2021, presentó una solicitud de reclasificación para el puesto de Supervisor de Contratos, que se formalizó el 7 de junio de 2021, en la cual alegó mayor complejidad en los deberes asignados. Sin embargo, manifestó que, el 4 de abril de 2022, se le notificó la denegatoria a dicha solicitud por lo que el 2 de mayo de 2022, presentó un *Escrito de Apelación*, identificado con el núm. JA-22-05, el cual aún se encontraba pendiente de resolución.  Adujo que, posteriormente, el 10 de junio de 2022, la directora de Recursos Humanos le notificó personalmente que su

---

[2] Íd., págs. 9-10.

puesto de Especialista en Contratos había sido reclasificado, transferido y trasladado al puesto de Auxiliar de Asuntos Gerenciales II en la Sección de Crédito y Cobros del Negociado de Finanzas.

Argumentó que dicho proceder constituía un acto de represalia por instar el *Escrito de Apelación* Núm. JA-22-05. Además, expresó que dicha determinación fue errónea, irrazonable y contrario a lo dispuesto en el Reglamento de Personal Núm. 4453, *supra*, particularmente las Secciones 101.2 y 105.3. Indicó que dicho reglamento establecía el principio de méritos como base de la administración de personal, asegurando que los empleados fuesen seleccionados, ascendidos y retenidos por su capacidad y ejecutoria, sin discrimen, y que se garantizara una retribución justa y proporcional al trabajo realizado.

Así las cosas, el 10 de enero de 2023, la JAP emitió una *Orden Inicial* en la cual se establecieron los procedimientos a seguir por las partes en el marco de la apelación.[3] Entre estos se incluyeron la presentación de documentos, el trámite procesal correspondiente, el descubrimiento de prueba y la celebración de las vistas causi-judiciales. Además, la JAP aclaró que dichos procedimientos administrativos se llevarían a cabo al amparo de las disposiciones de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* y el Reglamento de Personal Núm. 4453, *supra.*

En cumplimiento con las directrices de la *Orden Inicial*, el 6 de febrero de 2023, la señora Rodríguez presentó una moción en la que expuso los hechos relevantes que amparaban su apelación.[4] Además, la recurrente sostuvo que gozaba de protección bajo la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como *Ley de Represalias contra el Empleado por Ofrecer Testimonio*, 29 LPRA sec. 194, *et seq.* (Ley Núm. 115) que prohibía cualquier acción adversa

---

[3] Íd., págs. 20-22.
[4] Íd., págs. 56-60.

contra un empleado que ofreciera información o testimonio ante un foro legislativo, administrativo o judicial, así como en procesos internos de la agencia o empresa. De igual forma, planteó que, conforme a la Ley Núm. 8-2017, *supra*, los traslados de empleados solo podían realizarse dentro de la misma clase o a otra clase cuando el empleado cumpliera con los requisitos mínimos del puesto al cual fuese trasladado. Además, indicó que el Reglamento de Personal Núm. 4453, *supra*, disponía que los traslados debían implicar funciones de nivel similar, sin ajuste salarial, y sujetarse a condiciones específicas, tales como que el puesto estuviese en la misma escala de retribución, que el empleado cumpliera con los requisitos mínimos y que los supervisores estuviesen de acuerdo, hasta donde fuese posible. Añadió, que dicho Reglamento prohibía expresamente que los traslados se hicieran de manera arbitraria o como medida disciplinaria.

Alegó que, en este caso, había solicitado la reclasificación de su puesto de Especialista de Contratos al de Supervisor de Contratos, por entender que se le habían asignado funciones de mayor complejidad propias de este último. Sostuvo que la solicitud fue denegada por la Oficina de Recursos Humanos y Asuntos Laborales el 31 de marzo de 2021, y, en consecuencia, el 2 de mayo de 2022 presentó oportunamente una apelación (caso núm. JA-22-05). Sin embargo, expresó que mientras esa apelación estaba pendiente, el 7 de junio de 2022, la Autoridad de los Puertos dispuso su traslado al puesto de Auxiliar de Asuntos Gerenciales II en el Negociado de Finanzas.

Reiteró que este traslado fue arbitrario e ilegal, pues el nuevo puesto era sustancialmente distinto al de Especialista de Contratos que ocupaba y al de Supervisor de Contratos para el que solicitó reclasificación. Señaló que sus funciones pasaron de revisar, analizar y dar seguimiento a contratos —tareas especializadas y clasificadas como exentas— a realizar labores administrativas generales en Finanzas, en un puesto clasificado como no exento.

Asimismo, adujo que este cambio de puesto se produjo sin consulta, apenas un mes después de radicar su apelación, lo cual constituía una represalia y una violación al Reglamento de Personal Núm. 4453, *supra,* que expresamente prohibía el uso del traslado como sanción disciplinaria. Argumentó que la Autoridad buscó castigarla por haber ejercido su derecho a apelar. Por este motivo, solicitó que se revocara el traslado y, una vez se resolviera favorablemente la apelación sobre la reclasificación, se le restituyera al puesto de Supervisor de Contratos.

En respuesta, el 17 de abril de 2023, la Autoridad de los Puertos presentó una *Contestación a Moción en Cumplimiento de Orden sobre Apelación Enmendada.*[5] En síntesis, negó que la señora Rodríguez tuviese derecho a remedio alguno y planteó que cumplió en todo momento con el Reglamento de Personal Núm. 4453, *supra,* al reclasificar, transferir y trasladar a la recurrente al puesto de Auxiliar de Asuntos Gerenciales II en la sección de Crédito y Cobros del Negociado de Finanzas. Afirmó que dicho cambio respondió únicamente a necesidades del servicio, ya que la persona que ocupaba ese puesto se acogió a una licencia por enfermedad.

Como defensas afirmativas, enfatizó que el traslado fue legítimo, no arbitrario, y que se realizó tras evaluar a la recurrente y confirmar que cumplía con los requisitos mínimos del puesto. Aseguró que en ningún momento se utilizó un criterio discriminatorio ni en represalias, descartando factores de raza, sexo, edad, condición social, ideas políticas o religiosas, entre otros. Además, indicó que el puesto de Auxiliar de Asuntos Gerenciales II pertenecía a la misma clase y escala retributiva que el puesto de Especialista de Contratos previamente ocupado por la señora Rodríguez, por lo que su salario y beneficios marginales no se vieron afectados.

---

[5] Íd., págs. 79-82. Con "apelación enmendada", la Autoridad se refería a la moción que presentó la señora Rodriguez el 6 de febrero de 2023.

Por otro lado, adujo que la apelación no presentaba una reclamación que justificara remedio, que no se había establecido un caso *prima facie* de represalias y que la JAP carecía de jurisdicción para atender reclamaciones de represalia o daños y perjuicios, pues su competencia se limitaba a revisar decisiones que afectaran derechos reconocidos en el Reglamento de Personal Núm. 4453, *supra*. Finalmente, expresó que siempre había actuado de buena fe y conforme a derecho, que sus determinaciones se tomaron en el ejercicio de su discreción patronal y que no habían sido arbitrarias ni caprichosas.

Luego de varios incidentes procesales, entre ellos la radicación de un Informe de Conferencia con Antelación a Juicio[6], la vista en su fondo fue calendarizada para los días 19 al 21 de diciembre de 2023. Sin embargo, la misma tuvo que suspenderse porque, según surge de los autos, el 18 de diciembre de 2023, la JAP notificó por correo electrónico a las partes lo siguiente[7]:

> Por la presente les informo la cancelación de la vista en su fondo del caso JA-22-09. No tenemos ningún miembro de la Junta Apelativa disponible para comparecer a la vista. Una vez se designe algún miembro, se estará señalando una vista de estatus para coordinar las fechas de la Vista en su Fondo.

Ante la ausencia de un nuevo señalamiento, el 13 de marzo de 2024, la recurrente presentó una *Moción en Solicitud de Vista de Estatus y/o Vista en su Fondo*, solicitando que se pautara una vista de estatus con el propósito de fijar nuevas fechas para la vista en su fondo.[8] No obstante, dicha solicitud no fue atendida por la JAP.

En vista de lo anterior, el 6 de junio de 2024, la señora Rodríguez compareció ante el Tribunal de Apelaciones (TA) mediante una *Petición de Madamus* a los fines de que se le ordenara a la JAP a celebrar una vista en su fondo en el presente caso. Atendido dicho recurso, el 20 de junio de 2024, el TA dictó *Sentencia* en el caso núm. KLRX202400010, concediendo el remedio solicitado en el *mandamus* y, en consecuencia,

---

[6] Íd., págs. 96-108.
[7] Íd., págs. 138.
[8] Íd., págs. 139-140.

ordenándole a la JAP a calendarizar la vista en su fondo en un término de diez (10) días a partir de la notificación de la *Sentencia*.[9]

En cumplimiento con dicho dictamen, la JAP celebró la vista en su fondo los días 21 de noviembre de 2024 y el 20 de diciembre de 2024. En la primera vista, con fecha de 21 de noviembre de 2024, comparecieron como testigos el señor Rubert, la señora Figueroa, y la señora Rodríguez. En la segunda vista celebrada el 20 de diciembre de 2024, declararon la Sra. Jannette Vega Rivera y el Sr. Luis A. De Jesús Clemente (señor De Jesús).

Luego de celebrada la vista, el 17 de febrero de 2025, la señora Rodriguez presentó un *Memorando con Relación a Argumentación Final*.[10] En este, indicó que comenzó a trabajar en la Autoridad de los Puertos en el año 2004 como empleada temporera y en el año 2009 fue nombrada empleada regular. Expresó que, el 28 de mayo de 2021, solicitó la reclasificación de su puesto de Especialista de Contratos al de Supervisor de Contratos, ya que, a su entender, realizaba tareas de mayor complejidad inherentes a dicho cargo. No obstante, sostuvo que su solicitud fue denegada el 31 marzo de 2022 y, en respuesta, presentó una apelación (JA-22-05) ante la JAP el 2 de mayo de 2022.

Esbozó que, mientras la apelación estaba pendiente, el 10 de junio de 2022, la Autoridad le notificó que sería trasladada al puesto de Auxiliar de Asuntos Gerenciales II en el Negociado de Finanzas. Manifestó que dicho puesto resultaba diametralmente distinto al de Especialista de Contratos y al puesto de Supervisor de Contrato al cual había pedido reclasificación.

Expuso que, durante el juicio, el Sr. Orlando Rubert Ramos (señor Rubert) y la Sra. Susana Figueroa Liggett (señora Figueroa) confirmaron que el traslado no fue consultado con los supervisores, que no existía necesidad de movimiento y que la acción representó un despojo de funciones. De igual forma, sostuvo que la prueba demostró

---

[9] Íd., págs. 141-150.
[10] Íd., págs. 182-186.

que la reasignación se produjo de manera arbitraria y en represalia por la apelación que presentó inicialmente (JA-22-05).

Expuso que, durante el juicio, el Sr. Orlando Rubert Ramos[11] (señor Rubert), en su testimonio, indicó que en ningún momento se le consultó sobre la transferencia de la recurrente a otro departamento, manifestando además que, de habérsele consultado, se hubiera opuesto por la necesidad que tenía en su unidad. Asimismo, alegó que, el señor Rubert testificó que, le expresó a la Sra. Jeanette Vega que no estaba de acuerdo con la reclasificación de la recurrente y que nunca fue consultado respecto al traslado ni al despojo de funciones de ésta. Por otro lado, sostuvo que la Sra. Susana Figueroa Liggett (señora Figueroa) declaró haber fungido como mediadora entre el Sr. Arnaldo Misla y la apelante con el fin de evitar que se le despojara de sus funciones.

Además, reiteró que, conforme a la Ley Núm. 8-2017, *supra*, los traslados solo podían realizarse dentro de la misma clase o a otra clase, siempre que el empleado cumpliera con los requisitos mínimos del puesto al cual fuese trasladado. Asimismo, insistió que el Reglamento de Personal Núm. 4453, *supra*, disponía que los traslados debían realizarse manteniendo la misma escala de retribución, con la anuencia de los supervisores hasta donde fuese posible, y que en ningún caso podría hacerse de manera arbitraria o como medida disciplinaria.

A su vez, indicó que la Ley Núm. 115-1991, *supra*, protegía a los empleados que acudían a foros administrativos o judiciales en ejercicio de sus derechos, prohibiendo represalias en su contra. Por estas razones, solicitó que se revocara el traslado impuesto, que se le restituyera a su puesto anterior y que se le compensara por las funciones adicionales que realizó en el nuevo cargo, las cuales no guardaban relación con su clasificación.

---

[11] Supervisor de la recurrente mientras ésta ocupaba el puesto de Especialista de Contratos.

El 27 de junio de 2025, la JAP emitió y notificó una *Resolución*.[12] En primer lugar, expuso que, como parte de la vista en su fondo, las partes presentaron la siguiente prueba documental:

PRUEBA DOCUMENTAL ESTIPULADA:

Exhibit I: Carta de 28 de mayo de 2021 de Glorymar Rodríguez Diaz solicitando la reclasificación de su puesto.

Exhibit II: Carta de 31 de marzo de 2022 suscrita por Damarys I. Rivera Valle en la que se indica que no procede la solicitud de reclasificación del puesto.

Exhibit III: La Apelación en el caso Glorymar Rodriguez Díaz v. Autoridad de los Puertos, Caso Núm. JA22-05.

Exhibit IV: Carta del 7 de junio de 2022 suscrita por Damarys I. Rivera Valle.

Exhibit V: Relación de Deberes de Especialista en Contratos.

Exhibit VI: Relación de Deberes de Auxiliar en Asuntos Generales I.

Exhibit VII: Carta del 17 de octubre de 2017 RE: reubicación y traslado de la Oficina de Desarrollo Estratégico a la Oficina de Gerencia marítima.

PRUEBA DOCUMENTAL PARTE APELANTE:

Exhibit I: Correo electrónico de Apelante a Jannette Vega Rivera, Directora de Recursos Humanos RE: solicitud de información de puestos.
PRUEBA DOCUMENTAL PARTE APELADA:

Exhibit I: Carta de 1 de junio de 2022 y su anejo RE: REQUISICIÓN DE PERSONAL - AUXILIAR ASUNTOS GERENCIALES Il suscrita por el Sr. Luis A. De Jesús Clemente.

Exhibit II: Carta de 31 de marzo de 2022 suscrita por Damarys I. Rivera Valle en la que se indica que no procede la solicitud de reclasificación del puesto.

Exhibit III: Carta del 7 de junio de 2022 y sus anejos RE: Reclasificación, Transferencia de Puesto y Traslado Empleada Sra. Glorymar Rodríguez Diaz suscrita por Damarys I. Rivera Valle, Adolfo Mojica Santiago y Jannette Vega Rivera.

Exhibit IV: Acción de Personal de 14 de junio de 2022 RE: Reclasificación y Transferencia de Puesto y Traslado.

Luego, conforme a la prueba testifical y documental presentada en la vista formuló las siguientes determinaciones de hechos:

1. La Sra. Glorymar Rodriguez Díaz trabaja en la Autoridad de los Puertos desde el 16 de marzo de 2004. Comenzó su

---

[12] *Véase*, Entrada Núm. 2, SUMAC TA.

carrera en la Autoridad como Administradora de Contratos y desde entonces ha desarrollado una especialidad en el área de contratos.

2. Posee un Bachillerato en Administración de Empresas con concentración en Gerencia, así como aproximadamente 30 cursos en administración. Además, cuenta con una certificación expedida por la Oficina del Contralor de Puerto Rico para contrataciones gubernamentales.

3. El 28 de mayo de 2021, la Sra. Rodriguez presentó ante la Oficina de Recursos Humanos de la Autoridad una solicitud de reclasificación para el puesto de Supervisor de Contratos.

4. El 31 de marzo de 2022, la Autoridad denegó dicha solicitud. La notificación oficial de la denegatoria fue entregada el 4 de abril de 2022.

5. El 2 de mayo de 2022, la Sra. Rodríguez presentó un escrito de apelación ante esta Junta solicitando la revisión de la determinación que denegó su solicitud de reclasificación. Esta apelación fue asignada bajo el número de caso JA-2022-05.

6. El 1 de junio de 2022, el Sr. Luis A. De Jesús Clemente — DEA en Desarrollo Económico y Finanzas— solicitó formalmente cubrir un puesto vacante de Auxiliar de Asuntos Gerenciales II debido a una necesidad apremiante en el Negociado de Finanzas por la ausencia de personal clave.

7. Para el mes de junio de 2022, la Autoridad enfrentaba una necesidad apremiante de personal en el Negociado de Finanzas, particularmente en la Sección de Crédito y Cobros, debido a la ausencia por licencia de empleados clave, incluyendo al Sr. Joel Rivera.

8. El 6 de junio de 2022, la Sra. Vanessa I. Tirado — Administradora de Asuntos Financieros- recomendó a la Sra. Rodriguez para ocupar el puesto vacante. Esta recomendación fue respaldada por el Sr. De Jesús Clemente y avalada por personal de Recursos Humanos (Sras. Damarys Rivera Valle y Jannette Vega Rivera).

9. El 7 de junio de 2022, el Lcdo. Christian Trinidad de Jesús, entonces Subdirector Ejecutivo de la Autoridad, aprobó la reclasificación y traslado del puesto de la Sra. Rodriguez, acción formalizada mediante carta de la misma fecha.

10. Dicha notificación fue recibida por la Sra. Rodriguez el 10 de junio de 2022. A partir del 16 de junio de 2022, su nuevo puesto efectivo pasó a ser el de Auxiliar de Asuntos Gerenciales II, adscrita a la Sección de Crédito y Cobros del Negociado de Finanzas, bajo la supervisión directa de la Sra. Vanessa Tirado.

11. El cambio no implicó alteración en la escala salarial de la Sra. Rodríguez, que continuó siendo G-4, ni afectó su estatus como empleada de carrera.

12. El traslado se formalizó con el cambio del puesto número 8027.11.1521.113 (Especialista en Contratos) al puesto número 6029.11.1264.113 (Auxiliar de Asuntos Gerenciales II). Se transfirió también del Negociado Marítimo a la Sección de Crédito y Cobros del Negociado de Finanzas.

13. La Sra. Rodríguez expresó su desacuerdo con el traslado y reclasificación, indicando que no fue consultada previamente sobre su disposición o preferencia. Aun así, reconoció que dominaba a cabalidad las funciones del nuevo puesto.

14. La Sra. Rodriguez testificó que, al momento de ser notificada del traslado, tanto la Sra. Tirado como el Sr. De Jesús Clemente le expresaron que era la única persona que podía realizar el trabajo por su amplia experiencia y pericia en materia de contratos.

15. Según lo admitido por la propia Sra. Rodriguez, desde su traslado ha estado desempeñando la mayoría de las funciones asociadas a la clase de Auxiliar de Asuntos Gerenciales II, incluyendo, pero sin limitarse a:

   a. Coordinar y colaborar en el trámite y control de funciones administrativas de oficina;
   b. Establecer normas para el manejo de correspondencia y control de archivos.
   c. Atender visitas de clientes para asuntos delegados;
   d. Coordinar asuntos con otras unidades internas, agencias públicas o privadas;
   e. Supervisar tareas de personal subalterno;
   f. Realizar investigaciones asignadas;
   g. Analizar estimados de costos relacionados a mantenimiento y equipo.

16. La Sra. Rodriguez también continuó manejando parte de los asuntos previamente relacionados con el Negociado Marítimo, reflejo de su trasfondo técnico y funcional dentro de la Autoridad.

17. En cuanto a supervisión jerárquica previa, la Sra. Rodriguez estuvo bajo la dirección del Sr. Orlando Rubert, Director del Negociado Marítimo, quien asumió dicho cargo a principios del año 2020.

18. La Sra. Jannette Vega Rivera, quien participó en la evaluación y recomendación del traslado, laboró en la Autoridad por más de 30 años, con experiencia significativa en recursos humanos y clasificación de puestos.

19. El Sr. Orlando Rubert Ramos no estuvo de acuerdo con la transferencia de la Sra. Rodríguez y se lo expresó a la Sra. Jannette Vega.

A base del expediente administrativo, estas determinaciones de hechos y el derecho aplicable, la JAP desestimó el Escrito de Apelación presentado por la recurrente y, en consecuencia, ordenó su archivo. Resolvió que, el traslado y reclasificación de la señora Rodríguez al puesto de Auxiliar de Asuntos Gerenciales II en el Negociado de Finanzas se efectuaron conforme a la Ley Núm. 8-2017, supra, y el Reglamento de Personal Núm. 4453, supra. Indicó que la decisión se justificó en la necesidad urgente de personal en el área de Finanzas, particularmente por la ausencia de dos recursos clave, y se determinó que la recurrente cumplía con los requisitos mínimos del nuevo cargo, conservando su misma escala salarial y estatus de carrera.

Por otro lado, en cuanto a la alegación de represalias, concluyó que no se probó un caso *prima facie* bajo la Ley Núm. 115, *supra*, pues no hubo evidencia de que los funcionarios que recomendaron y aprobaron el traslado conocieran de la apelación anterior que presentó la señora Rodriguez. Además, puntualizó que, aún si hubiese habido conocimiento, la Autoridad de Puertos había demostrado una justificación legítima y no discriminatoria basada en la necesidad institucional. En vista de lo antes expuesto, la JAP determinó que no hubo actuación arbitraria, disciplinaria, ni represiva por lo que desestimó la apelación presentada.

En desacuerdo con este dictamen, el 29 de julio de 2025, la recurrente presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

**Erró y actuó arbitrariamente y caprichosamente la Junta Apelativa al determinar que la Autoridad de Puertos no tomó represalias contra la peticionaria.**

Cabe precisar que, junto al recurso, la señora Rodríguez presentó una solicitud para la reproducción de la prueba oral. Atendido el recurso y la solicitud antes expuesta, el 18 de agosto de 2025, emitimos una *Resolución* concediéndole un término a la recurrente para gestionar la regrabación de la prueba oral y otro término a ambas partes para presentar la transcripción de la prueba oral estipulada. En

cumplimiento con nuestra *Resolución,* las partes sometieron la transcripción de la prueba oral estipulada.

Luego de que las partes sometieron la transcripción de la prueba oral estipulada, emitimos una *Resolución* concediéndole a la Autoridad de los Puertos hasta el 16 de octubre de 2025 para presentar su oposición al recurso. Oportunamente, la recurrida presentó su *Oposición a Recurso de Revisión* y negó que la JAP cometiera el error que la señora Rodríguez le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia

administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd.  Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

El Art. 2 de la Ley Núm. 115, 29 LPRA sec. 194a, establece que:

(a) Ningún patrono podrá despedir, amenazar o discriminar contra un "empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(b) Cualquier persona que alegue una violación a esta Ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.

(c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta Ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y

fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. (Énfasis nuestro).

La Ley Núm. 115, *supra,* brinda protección a empleados frente a represalias que pueda tomar un patrono contra estos por proveer testimonio, expresión o información, ya sea verbal o escrita, ante un foro judicial, legislativo o administrativo. *Ocasio v. Kelly Servs.,* 163 DPR 653, 684 (2005). Así, el propósito del estatuto es proteger a los empleados de cualquier discrimen por medio de represalias por participar en una actividad protegida. Íd.

Un obrero tiene dos (2) maneras de establecer un caso de represalias, esto es: (a) probar la violación mediante evidencia directa o circunstancial; o (b) establecer la presunción *juris tantum* de la Ley Núm. 115, *supra. S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 362 (2009). Así, una vez el obrero presenta un caso *prima facie*, se crea una presunción de que el despido fue en represalias. Íd., pág. 361. Un empleado establece un caso *prima facie* cuando prueba que: (1) participó en una actividad protegida por la ley; y (2) subsiguientemente fue despedido, amenazado o discriminado en su empleo. Íd., pág. 362. Establecido lo anterior, le corresponde al patrono rebatir la presunción fundamentando el despido legítimamente. Íd. En caso de que el patrono cumpla con el segundo paso, el empleado debe demostrar que la razón alegada por el patrono es un mero pretexto para la acción adversa. Íd.

**-C-**

El Art. 2, Sección 2.1 de Ley Núm. 8-2017, 3 LPRA sec. 1469a, establece como política pública que todo empleado del sistema de recursos humanos sea seleccionado, adiestrado, ascendido y retenido en consideración al mérito, conocimiento y capacidad, sin discrimen por razón de raza, sexo, origen, condición social, ideas políticas o religiosas, edad, nacimiento, orientación sexual, identidad de género, condición de veterano, impedimento físico o mental o por ser víctima de violencia de género.

Por su parte, el Art. 5, Sección 5.2 de la referida Ley dispone que las corporaciones públicas deben adoptar reglamentos de personal que incorporen el principio de mérito y someter copia a la Oficina de Administración y Transformación de los Recursos Humanos. Dicho principio implica que los empleados públicos serán reclutados, seleccionados, ascendidos y retenidos con base en su capacidad y desempeño, sin discrimen, y que se seleccionen exclusivamente en atención a sus méritos e idoneidad. Art. 3, inciso 35 de la Ley Núm. 8-2017. El Tribunal Supremo reiteró que este principio exige que los más aptos sirvan al Gobierno y que toda decisión de personal se haga considerando el mérito y la capacidad, sin discrimen alguno. *González Segarra v. CFSE*, 188 D.P.R. 252, 280 (2013).

En cumplimiento, la Autoridad de los Puertos aprobó el Reglamento de Personal Núm. 4453, según enmendado, el cual dispone en su Sección 100.1 que el mérito regirá toda la administración de personal, de modo que los empleados sean seleccionados y ascendidos sin discrimen.

En cuanto a los traslados, el Art. 6, Sección 6.4 de Ley Núm. 8-2017, 3 LPRA sec. 1472d, dispone que, ante la necesidad de cubrir plazas, la Oficina podrá suplir personal mediante traslados o movilidad. Estos podrán hacerse dentro de la misma clase o a otra equivalente, siempre que el empleado cumpla con los requisitos mínimos, y estarán sujetos a período probatorio cuando corresponda, salvo que se justifique lo contrario por necesidades del servicio. Íd. Se autoriza la movilidad entre agencias, municipios y corporaciones públicas, pero se prohíbe que los traslados sean arbitrarios o se utilicen como sanción disciplinaria. Íd. Además, se faculta a las autoridades nominadoras a adoptar medidas cautelares o provisionales para proteger un ambiente laboral seguro, siempre que no resulten onerosas para el empleado. Íd.

Por su parte, la Sección 105.3 del Reglamento Núm. 4453, define el traslado como el cambio de un empleado a otro puesto en la misma

clase o en otra con funciones similares y retribución equivalente, sin ajuste salarial. El director ejecutivo podrá disponerlo por necesidades del servicio o a solicitud del empleado, siempre que el nuevo puesto corresponda a la misma clase o escala, el empleado cumpla los requisitos y, hasta donde sea posible, cuente con el visto bueno de los supervisores. Íd. Se establece expresamente que los traslados no podrán realizarse de manera arbitraria ni como sanción, y que cuando se trate de otra clasificación, el empleado estará sujeto al período probatorio del nuevo puesto. Íd.

III.

Antes de atender los méritos de este recurso, es menester destacar que las determinaciones administrativas gozan de una presunción de legalidad y corrección, la cual subsistirá a menos que se produzca suficiente prueba como para derrotarlas. Por ello, al revisar las determinaciones e interpretaciones de un foro administrativo, en un ejercicio de razonabilidad, nos limitaremos a analizar si este actuó de modo arbitrario, ilegal o de modo tan irrazonable que constituyó un abuso de discreción.

En su único señalamiento de error, la señora Rodríguez argumentó que la JAP erró y actuó arbitraria y caprichosamente al determinar que la Autoridad de Puertos no tomó represalias en su contra. La alegación de la recurrente descansa en que el traslado ordenado el 7 de junio de 2022 constituyó un acto de represalia como consecuencia de la apelación que ella presentó ante la JAP el 2 de mayo de 2022 (caso JA-22-05). Según argumenta, la Autoridad de los Puertos buscó castigarla por haber ejercido su derecho a revisión administrativa y, en consecuencia, la despojó arbitrariamente de sus funciones como Especialista en Contratos.

El marco normativo aplicable surge del Art. 2 de la Ley Núm. 115, *supra*, que prohíbe que un patrono despida, amenace o discrimine contra un empleado en los términos, condiciones, compensación, ubicación o privilegios del empleo por haber ofrecido o intentado ofrecer

testimonio, expresión o información ante un foro administrativo, judicial o legislativo. La doctrina de nuestro Tribunal Supremo exige que el empleado establezca un caso *prima facie* de represalia demostrando que: (1) participó de una actividad protegida y (2) fue objeto de un despido, amenaza o discrimen. De cumplirse ambos requisitos, surge una presunción *juris tantum* de represalia, la cual el patrono puede rebatir con una justificación legítima y no discriminatoria. *S.L.G. Rivera Carrasquillo v. A.A.A., supra,* pág. 362.

En el presente caso, la recurrente cumplió con el primer requisito, pues presentó una apelación administrativa que constituye una actividad protegida. Sin embargo, la prueba desfilada en la vista en su fondo no acreditó que el traslado ordenado fuera consecuencia de represalia de la apelación JJ-22-05.

El Sr. Luis A. De Jesús Clemente, Director Ejecutivo Auxiliar en Finanzas y Desarrollo Económico en ese momento, explicó bajo juramento que la medida respondió a una necesidad operacional urgente:

> "Falta de personal. [...] habían empleados que se habían retirado, otros se habían cogido licencia sin sueldo y realmente necesitábamos personal para poder seguir con las operaciones del área. [...] Al haber poco personal, pues estábamos atrasados en poder realizar las gestiones de cobro, las gestiones de facturación, verificar si los clientes subcontratos tengan todas las fianzas, que el contrato esté debidamente documentado, que tenga también las pólizas. [...] Es bien importante tener todo eso al día porque si al no tener una garantía con la fianza, pues entonces cuando hay una cuestión de gestión de cobro, el afianzador, pues entonces, no cubre la garantía del monto que debe algún cliente. [...] Pues entonces, no entra ingreso y, por ende, no se puede pagar la nómina y no se pueden pagar las debidas obligaciones que tenía la Autoridad."[13]

La propia señora Rodríguez corroboró en su testimonio que la razón ofrecida para el traslado fue la ausencia del Sr. Joel Rivera en Finanzas, lo que dejó a la Sra. Vanessa Tirado Rodríguez, administradora de asuntos financieros en ese momento, como única encargada de las dos oficinas:

---

[13] *Véase*, pág. 49, líneas 8-25 y pág. 50, líneas 1-15 de la transcripción de la prueba oral de la vista celebrada el 20 de diciembre de 2024.

"La razón que me explicaron fue que el señor Joel Rivera había tomado una licencia de... no recuerdo bien si era de enfermedad o sin sueldo, no recuerdo bien ahora. Pero sí me comentaron que había una necesidad por él, que al él salir de sus funciones Vanessa no podía sola, ella estaba sola, a nivel administrativo era la única persona que estaba dirigiendo las dos oficinas."[14]

De igual forma, quedó establecido que existió otro candidato evaluado para ocupar la plaza, lo cual demuestra que la selección de la recurrente no fue automática ni arbitraria. Respecto a esto, el señor De Jesús manifestó lo siguiente: "Había otro candidato que también cualificaba. [...] La otra candidata se llamaba Blanca Pérez y ella renunció de Puertos, por ende, quedó Glorymar."[15]

Por último, el señor De Jesús declaró de manera contundente que desconocía por completo la existencia de la apelación presentada por señora Rodríguez al momento de recomendar su el traslado. Particularmente, al preguntársele qué conocimiento, si alguno, tenía sobre la presentación de la apelación de la señora Rodriguez ante la JAP, éste contestó de forma clara: "Ninguna. Desconocía sobre todo ese tipo de situación."[16]

De este cuadro probatorio se desprende que no se probó el elemento de causalidad requerido por la Ley Núm. 115, *supra*, pues los funcionarios responsables de recomendar y aprobar el traslado no tenían conocimiento de la apelación presentada por la recurrente. Aun si se asumiera que existía tal conocimiento, la Autoridad de los Puertos articuló y demostró una justificación legítima y no discriminatoria, basada en necesidades genuinas del servicio.

En cuanto al marco normativo de la Ley Núm. 8-2017, *supra*, y el Reglamento de Personal Núm. 4453, *supra*, ambos disponen que los traslados pueden efectuarse por necesidades del servicio, siempre entre puestos de igual clase o escala retributiva, y que no podrán utilizarse

---

[14] *Véase*, pág.137, líneas 15-22 de la transcripción de la prueba oral de la vista celebrada el 21 de noviembre de 2024.

[15] *Véase*, pág.57, líneas 16-22 de la transcripción de la prueba oral de la vista celebrada el 20 de diciembre de 2024.

[16] *Véase*, pág.57, líneas 23-25 y la pág.58, líneas1-5 de la transcripción de la prueba oral de la vista celebrada el 20 de diciembre de 2024.

como medidas disciplinarias ni arbitrarias. La evidencia acreditó que el traslado de la apelante se efectuó dentro de la misma escala salarial, sin afectar su estatus de carrera, y obedeció a criterios funcionales válidos.

En vista de lo anterior y luego de realizar nuestra función revisora tomando en cuenta los criterios esbozados en *Torres Rivera v. Policía de PR*, supra, págs. 627-628, no encontramos que la JAP haya sido arbitraria o haya tomado una determinación irrazonable o ilegal. Tampoco consideramos que ésta haya cometido un error en la interpretación o la aplicación del derecho sustantivo al determinar que no mediaron represalias en el traslado de la recurrente. Así pues, tenemos el deber de validar la determinación realizada por la JAP. Consecuentemente, el señalamiento de error no se cometió.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones